UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR ONE PHONE NUMBER SERVICED BY AT&T CORPORATION | ML No. 23-ml-91 |

*Reference:*   *DOJ Ref. # CRM-182-81139; Subject Account: +001-702-533-4688*

### APPLICATION OF THE UNITED STATES
### FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Treaty Between the Government of the United States of America and the Government of the Republic of Hungary on Mutual Legal Assistance in Criminal Matters, Hung.-U.S., Dec. 1, 1994, S. TREATY DOC. NO. 104-20 (1995) (hereinafter, the "Treaty"), supplemented by the Protocol to the Treaty Between the Government of the United States of America and the Government of the Republic of Hungary on Mutual Legal Assistance in Criminal Matters signed 1 December 1994, Hung.-U.S., Nov. 15, 2005, S. TREATY DOC. No. 109-13 (2006) (hereinafter, the "Protocol"), to execute a request from the Republic of Hungary ("Hungary").  The proposed Order would require AT&T Corporation ("PROVIDER"), an electronic communication service and/or remote computing service provider located in North Palm Beach, Florida, to disclose certain records and other information pertaining to the PROVIDER account associated with **+001-702-533-4688**, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order.  The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order.  In

support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1. PROVIDER is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require PROVIDER to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed Order. *See* Treaty art. 5(1) (authorizing courts to issue orders necessary to execute the request). In addition, this Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. 18 U.S.C. § 2703(d). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

3. Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1). This application to execute Hungary's request has been duly authorized by an appropriate official of the Department of Justice, through the Criminal Division, Office of

International Affairs,[1] which has authorized execution of the request and has delegated the undersigned to file this application. The undersigned has reviewed the request and has confirmed that it was submitted by authorities in Hungary in connection with a criminal investigation and/or prosecution.

4. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

**RELEVANT FACTS**

5. Authorities in Hungary are investigating Janos Goczi, Ferenc Szepesvari, Ilona Maria Bakro, Olga Baski, and Istvan Nagy (the "Suspects") for extortion offenses, which occurred between March and June 2019, in violation of the criminal law of Hungary, specifically, Article 367(1) of Act C of the 2012 Hungarian Criminal Code. A copy of the applicable law is appended to this application. The United States, through the Office of International Affairs, received a request from Hungary to provide the requested records to assist

---

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

in the criminal investigation and/or prosecution. Under the Treaty and the Protocol, the United States is obligated to render assistance in response to the request.

6.       According to authorities in Hungary, on May 30, 2019, an individual using phone number **+001-702-533-4688** ("Victim 1") reported to Hungarian police that employees of a bar in Hungary (the "Suspects") extorted money from him through intimidation. Based on Victim 1's call, the Suspects prevented Victim 1 from leaving until Victim 1 paid EUR 500 (approximately USD 560) for beverages and food he did not order.

7.       According to Hungarian authorities, between March 2, 2019 and June 25, 2019, the Hungarian police received similar reports regarding the Suspects on at least four occasions through the emergency call line, mostly from victims who they believe were tourists. Based on these reports, the five Suspects would work in concert to prevent customers from leaving until the customers handed over cash they did not owe. The Suspects would intimidate any refusing customers by making threatening gestures, flinging their arms, and physically blocking the exits until the customers complied.

8.       According to one report, on June 25, 2019, the Suspects overcharged a group of tourists (the "Victim Group") for beverages, then demanded a cash payment of HUF 200,000 (approximately USD 700), an amount several times in excess of amounts listed on the menu. When the Victim Group refused and tried to leave, the Suspects escorted each individual out through a private entrance to an ATM machine. Fearing that the Suspects would physically harm them, each individual withdrew cash from the ATM and collectively gave HUF 200,000 (approximately USD 700) to the Suspects.

9.       To date, Hungarian authorities have been unable to locate, contact, or confirm the identities of the victims, including Victim 1, who used phone number **+001-702-533-4688** to

report the Suspects on May 30, 2019. Accordingly, Hungarian authorities now seek certain records from PROVIDER for the phone number +**001-702-533-4688**, serviced by PROVIDER, in order to identify and interview Victim 1.

### REQUEST FOR ORDER

10. The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help authorities in Hungary identify and locate the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity. Accordingly, the United States requests that PROVIDER be directed to produce all items described in Part II of Attachment A to the proposed Order within ten days of receipt of the Order.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: _____
Mindy Gee
Trial Attorney
DC Bar Number 1719348
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 300
Washington, D.C. 20530
(202) 598-2936 telephone
(202) 514-0080 facsimile
Mindy.Gee@usdoj.gov

## **Relevant Provision of the Hungarian Criminal Code**

**Section 367(1) of Act C of the 2012 Criminal Code**
A person who, for illicit gain, coerces another person by violence or threat to do, not to do or to tolerate something, and thereby causes any pecuniary loss, is guilty of a felony and shall be punished by imprisonment for one to five years.